IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 9, 2011 Session

**JACOB L. PEACHY v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F65827     Don R. Ash, Judge**

**No. M2011-01133-CCA-R3-PC - Filed March 30, 2012**

The petitioner, Jacob L. Peachy, appeals the Rutherford County Circuit Court's denial of his petition for post-conviction relief. The petitioner, pursuant to a negotiated plea agreement, pled guilty to attempted aggravated burglary, a Class D felony, in exchange for a sentence of two years in confinement. On appeal, he contends that his guilty plea was not knowingly and voluntarily entered due to the ineffective assistance of counsel. Specifically, the petitioner contends that trial counsel was ineffective by improperly advising him that his sentence was to be served on probation. Following careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Luke A. Evans and Caleb B. McCain, Murfreesboro, Tennessee, for the appellant, Jacob L. Peachy.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Jude P. Santana, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The facts underlying the petitioner's conviction for attempted aggravated burglary, as recited at the guilty plea hearing, are as follows:

> Had this matter gone to trial, the State would have introduced witnesses to include Officer Ed Gorham of the Murfreesboro Police Department who the State believes would testify as follows.
>
> That on or about the 9th day December, 2009, that an investigation into a burglary at 222 Glenview Drive here in Rutherford County, State of Tennessee, did occur. And there were two juveniles that were involved that have already pled guilty and were taken into custody.
>
> Also, [the petitioner] was determined to have been involved in the burglary as well. All of these events did occur here in Rutherford County, State of Tennessee, and prior to the return of this indictment. The juveniles did admit to breaking in the house and did involve [the petitioner.]
>
> He would plead guilty to attempted agg[ravated] burglary. It would be two years to serve. No further petitions or applications. Restitution of $480. It will be consecutive to his present sentence. I understand he is serving a sentence of five years.

The petitioner had originally been indicted for one count of aggravated burglary by a Rutherford County grand jury. As noted by the State in its recitation, pursuant to the plea agreement, the petitioner was allowed to plead guilty to the lesser offense of attempted aggravated burglary and was sentenced to the minimum sentence of two years. The negotiated plea agreement, which was admitted into evidence at the plea hearing, reflects just that sentence. The agreement clearly reflects a sentence of two years, as a Range I offender, and states that the "place of confinement" is to be "TDOC."

Following the State's recitation of the underlying facts at the plea hearing, the trial court then admonished the petitioner of all the applicable rights he was waiving and questioned the petitioner to ensure his understanding of the plea agreement. The petitioner replied in the affirmative that he had heard the facts announced by the District Attorney and agreed that those facts were basically correct. The petitioner also affirmatively answered that trial counsel had explained the range of punishment to him. Finally, the petitioner affirmatively replied that he had reviewed the plea agreement with trial counsel, that he understood the agreement, and that he had no questions. After questioning the petitioner, the trial court stated on the record:

Sir, I'm going to find you guilty of [attempted aggravated robbery]. Sentence you to two years as a Range I, [thirty] Percent Offender. You'll have to pay court costs. You will be rendered infamous, be required to give a D.N.A. specimen.

This will be two years to serve. . . .

Thereafter, on January 12, 2011, the petitioner filed a *pro se* petition for post-conviction relief, alleging that his plea was not knowingly and voluntarily entered because trial counsel misled him about the manner of service of the two-year sentence. Following the appointment of counsel, an amended petition was filed with the court, and a hearing was held on the matter.

The first witness called to the stand was the petitioner. He stated that, on the day he pled guilty, trial counsel had specifically advised him that his two-year sentence would be suspended to probation. According to the petitioner, "I asked him this three times before I signed the deal if [] I was correct on thinking that and he said yes all three times." The petitioner continued and stated that, had he known the agreement called for the sentence to be served in incarceration, he would not have entered the plea. He acknowledged that the plea transcript reflected that the sentence was to be served. At various points in his testimony, the petitioner first stated that he was confused, then that he did not hear, then that he had merely trusted his attorney and had not read the agreement, and then that he "didn't catch the to serve whenever [the trial court] explained that." He maintained that he had relied upon trial counsel's statements that the sentence would be suspended.

The petitioner also called his mother and stepfather to testify. Both stated that trial counsel told them that the petitioner would receive a two-year suspended sentence and would serve no jail time. Both witnesses indicated that trial counsel made these statements to them three or four times. The petitioner also called his friend, Gina Bryant, who testified that she was in court on the day of the plea and overheard trial counsel telling the petitioner's mother that the petitioner would not serve any jail time.

Trial counsel then took the stand and testified that he had negotiated the petitioner's plea with the State. He also stated that he had advised the petitioner of the agreement and explained that he would receive a sentence of two years to be served at thirty percent. Trial counsel indicated that he reviewed the plea petition with the petitioner, which stated that he was to serve the sentence in the Department of Correction. He further stated that the petitioner did not appear confused on the issue of whether his sentence would be served or suspended.

Trial counsel also testified that he was visited in his office several months later by the petitioner's mother and stepfather. He indicated that he did not recall their questioning him as to whether the petitioner had a suspended sentence, only that they "had some issues with his time."

After hearing the evidence presented, the post-conviction court found that the defendant and his witnesses were not credible and denied relief. The petitioner subsequently filed a notice of appeal with this court.

**Analysis**

On appeal, the petitioner contends that the post-conviction court erroneously denied his post-conviction petition for relief because the petitioner claims he showed by clear and convincing evidence that his plea was not knowingly and voluntarily entered based upon misrepresentations by trial counsel. In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that"[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must

demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Id*. at 458.

As an initial matter, the State has pointed out that the notice of appeal document in this case was not timely filed. The record indicates that, following the denial of the petition on March, 29, 2011, the petitioner attempted to file a notice of appeal on April 26, 2011. However, it was erroneously filed with the appellate court clerk rather than the trial court clerk. Upon realizing this, the petitioner filed a motion to late-file notice of appeal in the trial court. While the record indicates no disposition with regard to the motion, it does indicate a late-filed notice of appeal in the trial court on May 11, 2011.

"In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within [thirty] days after the date of entry of the judgment appealed from. . . ." Tenn. R. App. P. 4(a). It is not disputed that this did not occur in this case. However, "[i]n criminal cases, . . . the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." *Id*. Based upon the explanation given, we conclude that, in this case, the interest of justice deems that the untimely filing of the notice of appeal be waived.

In the written order denying relief in this case, the post-conviction court stated:

> The Petitioner claims he was told by [trial counsel] this sentence was suspended. However, the record (judgment sheet, transcript, and all other documents) reflects everything describes this as a two (2) year sentence to serve. The Court does not find [the petitioner] or his witnesses credible. The [Petitioner] has not met his burden. . . .

According to the petitioner, the post-conviction court erred in denying him relief because he "put on a clear and convincing case arguing that he was simply confused when he entered his plea because he relied on the assurances of his attorney." The petitioner acknowledges that all documentation in the record indicates that this was a two-year sentence of incarceration; however, he maintains that he, along with this witnesses, were told by trial counsel that no jail service would be required. The petitioner further finds fault with the court's credibility determinations of himself and his witnesses, asserting that the court gave "no reasons for such a finding and there was little, if any impeachment of [the petitioner's] witnesses." He claims "[t]he testimony of [the petitioner's] witnesses was simple, straightforward and consistent . . . [while] the testimony of . . . [trial counsel] is subject to much more scrutiny than that of [the petitioner's] witnesses . . . because [he] could not remember whether the plea petition contained crucial information regarding whether the sentence was to be suspended . . . or whether he spoke in the hall with [the petitioner's] mother and step-father on the day of the plea."

The petitioner's argument is essentially nothing more than a challenge to findings of credibility made by the post-conviction court. It has been repeatedly held that this court is bound by the post-conviction court's factual findings, including the findings on credibility of witnesses and the weight and value of their testimony, unless the record preponderates against those findings. *Burns*, 6 S.W.3d at 461. It is the lower court that is best situated to make these credibility determinations based upon demeanor, genuineness, and the testimony offered. Following a review of the record before us, we finding nothing in the record which would remotely preponderate against the findings made by the post-conviction court.

There is no question that this case turns on the issue of credibility, as the only support for the petitioner's argument relies upon his assertion that trial counsel told him and his witnesses that it would be a suspended sentence. However, while the petitioner and his family witnesses testified to this, trial counsel affirmatively stated that he never informed the petitioner that he would not serve time. Trial counsel indicated that he reviewed the agreement, which referred to service in the TDOC, and stated that the petitioner appeared to understand. Again, it is the lower court that is best suited to weigh the testimony of the witnesses for credibility. The post-conviction court's findings here are supported by the

record. Indeed, every document in this case belies the fact that trial counsel and the petitioner were both aware of the fact that the sentence was to be served. The transcript reflects that the petitioner was advised in open court, on at least two occasions, that this sentence was "to serve." Thus, even if trial counsel had misinformed him, he was given the opportunity by the trial court, prior to the acceptance of the plea, to address any questions or concerns with the agreement. We would note that this was not the petitioner's first appearance before the judicial system, lending credence to the post-conviction court's findings of credibility with regard to the assertion that he was confused.

The record before us establishes that there no ineffective assistance of counsel and, further, that the petitioner entered this plea knowingly, understandingly, and voluntarily. The petitioner has simply failed to carry his burden in this case and is, accordingly, entitled to no relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE